Gary R. WALL and William Cooksey, Sr., Plaintiffs–Appellants,

v.

CONSTRUCTION & GENERAL LABORERS' UNION, LOCAL 230, John Pezzente, Dominick Lopreato, and Charles Leconche, Defendants–Appellees.

Docket No. 99–7773.

United States Court of Appeals, Second Circuit.

Argued: June 8, 2000.

Decided: Aug. 24, 2000.

Wendy E. Sloan, Hall & Sloan, New York, New York, for Plaintiffs–Appellants.

Robert M. Cheverie, Robert M. Cheverie & Associates, P.C. (John T. Fussell, of counsel), East Hartford, Connecticut, for Defendants–Appellees.

Before: WINTER, Chief Judge, KATZMANN, Circuit Judge, and HODGES, District Judge.*

WINTER, Chief Judge:

Appellants Gary R. Wall and William Cooksey, Sr.—two long-time dissident members of appellee Construction & General Laborers' Union, Local 230 (hereinafter "Local 230" or the "Union")—stopped paying dues after prevailing against the Union in a National Labor Relations Board ("NLRB") unfair labor practice proceeding. Thereafter, however, both men attempted to be readmitted to the Union pursuant to a right guaranteed by the Union's constitution. However, the Union refused to readmit them based on shifting reasons.

■ Appellants' complaint in the present matter alleged violations of Sections 101 and 609 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411, 529, and state law claims. The Union moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that appellants were not "members" of the Union. The district court denied the motion.[1] However, it granted summary judgment on limitations grounds based on the fact that appellants did not file suit within three years from the time that the Union first responded to their requests for readmission. The district court rejected appellants' arguments that the Union's conduct constituted a continuing violation and/or that the limitations period was tolled. It ·also dismissed the state law claims, concluding that they were preempted by Section 301 of the Labor Management Relations Act ("LMRA").

We reverse in part and affirm in part. We hold both that appellees are equitably estopped from interposing a limitations defense and that the limitations period was tolled on statutory grounds. Accordingly, appellants' LMRDA claim should not have been dismissed as time-barred. Appellants' state law claims, however, were properly dismissed on preemption grounds, although on remand the district court may in its discretion permit these claims to be reframed as federal claims.

## BACKGROUND

We of course view the record in the light most favorable to appellants. *See Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219, 222 (2d Cir. 2000). In this regard, we have a considerable advantage over the district court in that appellants now have the benefit of counsel, and a more organized presentation of the record has been made to us than was made in the district court.

a) *Lapse in Union Membership and Initial Readmission Efforts*

Wall and Cooksey were both long-time members of Local 230, one of several local

---

* The Honorable William Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

1. The district court concluded that there were genuine issues of material fact as to whether appellants were "members" under 29 U.S.C. § 402(*o*), such that they could "avail themselves of the protection afforded by the LMRDA, which, by its terms, applies only to union members." *Wall v. Construction & General Laborers' Union, Local 230*, 3:97–CV–942, at 2–3 (D.Conn. May 5, 1999) (unpublished ruling on appellees' motion to dismiss

or for summary judgment); *see also Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1055–57 (2d Cir.1992) (explaining that only members of union are entitled to LMRDA protection). The district court explained that there was a "factual dispute over the precise contours of the readmission requirements," and that appellants "presented evidence sufficient to support a jury finding in their favor" on the issue concerning the unequal treatment they received when denied readmission. *Wall*, at 4–5. We agree.

unions affiliated with the Laborers' International Union of North America ("LIUNA"). By or about 1985, appellants had become dissidents clashing with the Union leadership, including appellees Lopreato, Pezzente, and LeConche. Believing they were being singled out for discriminatory treatment, appellants brought unfair labor practice charges against the Union before the NLRB. The NLRB found that the Union removed Wall as shop steward in November 1985 in retaliation for refusing to follow directions involving the "shake down" of laborers for money. The NLRB also found that the Union had discriminated against both Wall and Cooksey in the Union's hiring hall referral system in retaliation for their opposition to Union management. The NLRB ordered the Union to make appellants whole for lost earnings suffered as a result of its discriminatory conduct.

In July 1990, Cooksey could not get work and stopped paying union dues. In January 1992, the unfair labor practice proceeding was settled with appellants' consent. Wall stopped paying union dues in February 1992, intending to dissociate from the Union. Disputes later arose, however, with respect to the effect of the settlement on Wall's and Cooksey's pension credits. Appellants contended that they were misled as to what they would receive.

Appellants apparently came to believe that their pension benefits might be enhanced if they renewed their membership in the Union. Cooksey first requested readmission to the Union in a letter dated April 24, 1992, to which he attached a check for $351.00. The Union responded on April 28, 1992 that there was no work available and that it was the Union's policy not to "initiate or reinstate" members absent work opportunities. The letter suggested that Cooksey "defer [his] application of reinstatement until [he] bec[a]me employed" and returned the $351.00 check. The letter said nothing about a one-year limitation on readmission.

In August 1993, Wall wrote to the Union to learn the amount of dues owed on his "book," a term synonymous for our purposes with union membership. The Union responded in a letter dated August 25, 1993, titled "Readmission to Local Union 230." The letter stated that, because Wall had been delinquent in the payment of his dues "in excess of one (1) year, [he was] not eligible for a readmission on [his] previous book but must be reinitiated as a new member, subject to payment of the initiation fee." The letter also stated that it was the Union's policy not to accept new members except where there are work opportunities "or where the applicant is working at the calling." The letter closed by explaining that

Presently, there are no significant referral opportunities in the jurisdiction. However, should you wish to sign the list for referral if and when such an opportunity should arise, you are free to do so. Upon your referral or employment at the calling, you will be considered eligible for membership, subject to payment of all required fees.

Thereafter, both appellants sought work through the local's hiring hall, as suggested by the Union's letters.

b) *Readmission Efforts from 1995–1997*

On February 13, 1995, LIUNA entered into an agreement with the United States Department of Justice. At or about this time, appellants retained an attorney, Marc P. Mercier. Mercier suggested that appellants seek readmission through procedures established in the new agreement before filing suit. Both men thereafter sent letters to the Union again requesting readmission. Cooksey sent a letter dated March 1, 1995, "requesting to be readmitted" and noting that this was his "second request." The Union responded in a letter dated March 7, 1995:

[I]t is and has been the policy of Local Union 230 to take no new initiations or readmissions unless and until there is a

172

job to which the applicant can be referred or unless the applicant has a position in covered employment. Regrettably, there is no work now available on a referral basis. However, you may register for referral at any time and will be referred to work in accordance with our existing referral system as vacancies may occur.

In a letter dated April 24, 1995, Wall also "request[ed] to be readmitted," referring specifically to his right to readmission under LIUNA's constitution. The Union responded on April 26, 1995, stating that Wall had "been advised previously that it is and has been the policy of Local Union 230 to take no new initiations or readmissions unless and until there is a job to which the applicant can be referred to unless the applicant has a position in covered employment." Neither response by the Union mentioned anything about a one-year rule.

In December 1995, several months after these rejections, the Union barred appellants from signing the referral list. Appellants immediately complained to Michael S. Bearse, LIUNA's General Counsel, and, with Mercier's aid, were once again allowed to sign the referral list. Wall also wrote to the Union and asked, among other things, whether he could "interpret the meaning of being registered on Local Union 230 out of work list as meaning [the Union] will now allow us to exercise our rights to readmission. If so please tell me the amount of money needed and I will send it to you immediately." On January 5, 1996, LeConche responded to Wall's inquiry regarding readmission, stating that "it is my opinion that you may be a barred individual within the meaning of the LIUNA Ethics Code. Therefore, I will be referring this matter to the Inspector General's Office." On April 9, 1996, the Union's attorney, Robert M. Cheverie, wrote a let-

ter to the Inspector General conveying his legal opinion that Wall and Cooksey were "barred persons."

During this time period, LIUNA's General Executive Board ("GEB") attorney, Robert D. Luskin, investigated appellants' complaint concerning their right to readmission into the Union.[2] On June 26, 1996, Luskin wrote Cheverie and noted that he had read Cheverie's April 9, 1996 letter. However, Luskin stated that he believed Cheverie's position to be untenable. Luskin noted that he "understand[s] Local 230's current position . . . to be that . . . re-initiation has been denied 'solely' on account of your conclusion that [Wall and Cooksey] have engaged in 'barred conduct.'" Luskin explained:

Any person may lodge a complaint with the Inspector General. However, no person may be denied membership in LIUNA, or have his membership rights limited or withdrawn, unless he or she has been charged by the GEB Attorney and has been afforded the due process rights guaranteed by the Ethics and Disciplinary Procedure.

Luskin further informed Cheverie that the Union "may not deny re-initiation to Messrs. Cooksey and Wall on the basis that you have articulated. [And i]n light of the fact that this is the sole basis on which their right to re-initiation has been denied, Local 230 should be advised to permit them promptly to exercise their right to re-initiate." The Union did not, however, take any steps to permit Wall and Cooksey "promptly to exercise their right" to readmission.

Several days later, on July 1, 1996, Wall was finally referred for work. When Wall reported to the work site, he asked the union steward to call Local 230 to inform the Union that he had reported to work and that he was requesting a book. The union steward informed Wall that the Un-

2. The position of GEB attorney was created in January 1995, by the LIUNA Ethics and Disciplinary Procedure, which itself "was established to assist LIUNA's voluntary internal reforms pursuant to [the February 1995 a]greement between LIUNA and the United States."

ion would not permit him to buy a book. Membership was thus denied to Wall.

On July 16, 1996, Luskin wrote Cheverie another letter in which Luskin noted that he had been told that Local 230 "was not relying solely on ... [the alleged] 'barred conduct' as the basis for refusing [appellants'] readmission as members. Rather, [the Union also] believed that a local union member who voluntarily permitted his membership to lapse was not entitled to re-admission as a matter of right." Luskin stated that the position "represents a change from the position previously asserted" by the Union,

> namely, that any person, whether or not a member of the union, may participate in the job referral list operated by Local 230, but, so long as members are out of work, no person will be re-initiated or initiated until he is dispatched or otherwise obtains a job with a covered employer. In reliance on this position, we anticipated that if Mr. Cooksey or Mr. Wall secured a job with a covered employer or were dispatched by the local, they could then exercise their right to re-initiate.

Luskin also informed Cheverie that the "current position is at odds with the plain language of Article III, Section 2(e) of the [LIUNA] [c]onstitution, which guarantees to each member the right '[t]o readmission.'" He stated that a "local union simply does not have discretion absolutely to refuse a request for re-admission. This is especially true in light of the additional change in local policy to refuse to permit non-members to have their names placed on the out of work list." Accordingly, Luskin "directed [Local 230] to permit Messrs. Cooksey and Wall, if they choose, to exercise their right to readmission." Luskin so notified Mercier in a letter dated July 24, 1996.

Nevertheless, the Union did not readmit Wall and Cooksey. Rather, Bearse wrote Luskin in October 1996 and took the position that Cooksey had no constitutional right to readmission because a year had

passed following a lapse in dues. Luskin appears then to have taken the matter under prolonged reconsideration.

On May 15, 1997, Wall and Cooksey, represented by Mercier, filed the present action against the Union and its officers. On September 10, 1997, Luskin reversed his position as to appellants' right to readmission, stating:

> Since the issuance of the [July 16, 1996] letter ..., I have been made aware of LIUNA's long standing interpretation of Article III, Section 2(e) and Article VIII, Section 6 of its Constitution.... Upon review of LIUNA's long established interpretation and application of its Constitutionally based readmission right, I concur that the readmission right afforded members of LIUNA must be exercised within twelve (12) months of a member's dues delinquency, except where there is evidence that such delay was the result of conduct prohibited by the LIUNA Ethical Practices Code, the LIUNA Ethics and Disciplinary Procedure, or the LIUNA Constitutions.

### c) *Post–Suit Proceedings*

Appellants asserted three claims in their complaint. First, they claimed that the Union violated Sections 101 and 609 of the LMRDA, 29 U.S.C. §§ 411, 529, because it: (i) refused to admit or readmit them into Local 230; (ii) refused and/or interfered with their ability to obtain employment; (iii) refused to provide them with rights afforded to other Local 230 members; and (iv) unlawfully disciplined them. Second, appellants claimed that they were "wrongfully terminated, constructively terminated and/or refused employment," in violation of Conn. Gen.Stat. § 31–51. Finally, they claimed that the Union "tortiously interfered" with their "employment and/or reasonable expectations of employment."

The Union's answer, filed in September 1997, asserted that all three claims were time-barred and that the state law claims

**174**

were preempted by federal law. After answering, the Union moved, *inter alia,* for summary judgment on limitations grounds. The district court granted appellants an extension of time to respond to the motion and to conduct limited discovery. In December 1997, Mercier moved to withdraw as appellants' counsel. The district court granted the motion, and appellants proceeded *pro se* from that point until they retained new counsel on appeal.

The district court issued an interim ruling following oral argument, in which it concluded that "further submission by the [appellants] would assist the court." Thereafter both parties filed numerous additional documents with the court. In May 1999, the district court dismissed the complaint.

The district court concluded that the LMRDA claim was barred because Cooksey and Wall failed to file suit within three years from the date the Union first denied their requests for readmission in 1992 and 1993, respectively. The district court rejected appellants' claims that the Union's conduct constituted a "continuing violation," *Wall* at 5–6, and that the statute of limitations had been tolled.

As to the state law claims, the district court first decided to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367. *See Wall* at 10. It nevertheless dismissed the claims on the ground that Section 301 of the LMRA, 29 U.S.C. § 185, preempts claims that are "inextricably intertwined with consideration of the terms of [a] labor contract," *id.* at 11 (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)), and both state law claims were considered to be " 'inextricably intertwined' with interpretation of the Union's Constitution," *id.* at 11–12.

This appeal followed.

## DISCUSSION

### a) *LMRDA Claim*

Section 101(a)(2) of Title I of the LMRDA—the "Bill of Rights"—guaran-

tees members "the right to meet and assemble freely ... and to express any views, arguments, or opinions" concerning union policies. 29 U.S.C. § 411(a)(2). Section 609 of the LMRDA protects members from being fined, suspended, expelled, or "otherwise discipline[d]" for "exercising any right to which [they] are entitled under the provisions of this chapter," which includes Title I. 29 U.S.C. § 529. Appellants contend that the Union refused to readmit them, interfered with their ability to obtain employment, refused to provide them with rights afforded to others, and unlawfully disciplined them because of their dissident activities, in violation of the LMRDA.

The district court concluded, and the parties agree, that a three-year statute of limitations applies to appellants' LMRDA claim. *See Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (holding that actions brought under § 101(a)(2) of LMRDA are governed by state law limitations period applicable to personal injury actions); Conn. Gen.Stat. § 52–577 (Connecticut personal injury limitations period is three years). The Union rejected Cooksey's first request for readmission in April 1992 and Wall's first request in August 1993. The instant suit was filed on May 15, 1997. Concluding that the statute began to run on the date of the respective first denials, the court granted summary judgment.

### 1) The Right to Readmission

■ Although the district court dismissed the complaint as time-barred, it also concluded that there was a material issue of fact as to whether appellants had a right to readmission. The Union argues on appeal that appellants, their dues having been in arrears for more than a year, had, as a matter of law, no such right. Because this issue is central both to the underlying dispute and to the limitations issue, we address it now.

Local 230 is affiliated with LIUNA, and, as such, is governed by LIUNA's Uniform Local Union Constitution ("constitution"). The constitution delineates various rights of union members, including a right to "readmission." The pertinent provision states that, "all persons having lawfully acquired membership in the Union, shall be entitled to the following rights: ... [including the right] [t]o readmission." Constitution, art. III, §§ 2, 2(e).

With regard to membership, the constitution states that "to be eligible ... a person must be working at the calling within the territory of the Local Union in which the individual applies for membership." *Id.* at art. III, § 1(a). Various other requirements for membership include the rule that an applicant "must tender to the Local Union ... the initiation fee, dues and other lawful fees and assessments that prevail in said Local Union." *Id.* at art. III, § 1(e). The constitution requires that members pay dues, or lose eligibility for membership. *Id.* at art. III, § 1(e); art. VIII, § 4.

Article VIII of the constitution—titled "Initiation Fees, Readmission Fees, Dues and Assessments"—states:

The readmission fee for persons who are suspended for nonpayment of dues, assessments or fines to the Local Union and who remain suspended for a period of less than one year, shall be the amount of such assessments or fines, plus the current dues, plus the greater of [two amounts] ... for each month during which the member was suspended. In no case shall the readmission fee be greater than the initiation fee.

Once the member has been suspended for defaulting in the payment of dues ... the date of suspension ... shall be the first day after the month for which the member's dues were last paid.

Persons in arrears have no right to attend meetings nor any other rights except the right to be readmitted in accordance with the above Section.

... Readmitted members shall be considered new members from the date of their readmission.

*Id.* at art. VIII, §§ 6, 7.

Local 230 concedes that there is no express limitation in the constitution on the right to readmission. It argues, however, that any such right is limited to the twelve months beginning with the initial delinquency in dues. This contention is seemingly based on an inference drawn by the Union from the above-quoted language in Article VIII of the constitution. Arguably, a more plausible meaning is that former members have priority to membership over new applicants but are otherwise treated like new members. Indeed, the Union's correspondence appears at times to use "readmission," "reinitiation," and "initiation" interchangeably. However, Local 230 also argues that there is a longstanding interpretation or practice that limits the right to readmission to 12 months' duration after a member's unresolved delinquency arises. We disagree.

The language of the constitution does not unambiguously—to say the least—support the Union's view. Moreover, on the present record, the claim of the Union as to a longstanding interpretation or practice regarding a 12-month rule is not sufficient to resolve the issue as a matter of law. The Union has hardly been consistent in asserting the 12-month rule even with regard to appellants. In addition, appellants have submitted affidavits indicating that other members in arrears for more than a year were readmitted without difficulty.

We agree with the district court, therefore, that there is "evidence sufficient to support a jury finding" that "the Union has not consistently enforced a twelve-month time limit on members' readmission rights." *Wall* at 4–5 (citing to affidavits filed in opposition to motion).

2) Equitable Estoppel and Tolling

Under federal law, "a claim generally accrues once the plaintiff knows or

has reason to know of the injury which is the basis of his action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994) (internal quotations and citations omitted). However, a defendant "may be equitably estopped from asserting the statute of limitations 'in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit.'" *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995) (quoting *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir.1985)). To trigger the doctrine of equitable estoppel, a plaintiff must show that: (i) "the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it"; and (ii) "the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry*, 68 F.3d at 1493.

■ In the present matter, appellants' claim is based on an allegedly discriminatory refusal by the Union to readmit them to membership. Knowledge of this claim sufficient to start the limitations period required an act by the Union denying eligibility for membership. Arguably, the first act of the Union indicating an unequivocal decision to deny readmission to appellants occurred only in December 1995 when appellants were prevented from signing the referral list—and then only temporarily—followed the next month by the Union's claim that they were "barred persons" under the LIUNA Ethics Code. We need not fix the precise time at which appellants knew of their claim because, even before the events of late 1995/early 1996, the Union provided appellants with false and misleading justifications as to why they could not be readmitted at a particular time, while holding out the promise that readmission would follow referral to a job. Because appellants reasonably took these justifications at face value and delayed bringing their action, the Union is estopped from interposing a limitations defense even if appellants knew of their claim in 1992.

The first denial of appellants' readmission requests clearly stated that both appellants could become union members again if they were referred for employment. The Union told Wall that he would be considered eligible for membership "[u]pon [his] referral or employment at the calling." It told Cooksey that it was "suggest[ing] that [Cooksey] defer [his] application of reinstatement until [he] bec[a]me employed either by referral, recall, or on [his] own initiative." Both men thereafter attempted to be referred to work by signing the referral list, a reasonable action given the constitution's conditioning of membership upon "working at the calling."

In March and April 1995, when the Union rejected appellants' second formal requests for readmission, the Union again stated that it would take "no new initiations or readmissions unless and until there is a job to which the applicant can be referred." However, in December 1995 the Union tried to prevent appellants from signing the referral list—an act guaranteeing, of course, that neither individual would or could be referred for work. Both complained to Bearse and were allowed once again to sign the list. When Wall again requested readmission to membership, the Union took the position that Wall "may be a barred individual ... [and] referr[ed] this matter to the Inspector General's Office." In June 1996, Luskin rejected the "barred persons" claim and instructed the Union to allow appellants back into the Union. In July, Wall was finally referred for work. Despite having been told several times that he could become a member upon referral, however, he was denied membership.

In a July 1996 letter, Luskin indicated that the Union now claimed that appellants were barred from membership by the 12–month rule. Noting the lack of constancy in the Union's position, Luskin rejected this new claim. In that and in the earlier letter in June, Luskin stated, in no uncer-

tain terms, that appellants were entitled to exercise their right to readmission notwithstanding the Union's claims of barred conduct or a limited duration of the readmission right. Accordingly, Luskin "directed" the Union to permit appellants to exercise their readmission right. The Union leadership refused and, only after appellants filed suit, ultimately convinced Luskin to reverse his opinion.

There is more than sufficient undisputed evidence in this record, as recounted above, to demonstrate that the Union intended to prevent appellants from ever being readmitted to membership and sought to conceal that intent by equivocal, temporizing, and misleading denials based on the lack of referral. Until late 1995, the Union clearly told appellants that readmission would be granted upon referral. Later events showed this to have been a misrepresentation. Relying upon these clear, albeit false, promises, appellants did not bring suit but sought referral. That action constituted reasonable reliance that would clearly be detrimental if the present action were to be deemed time-barred.

■ Moreover, even after the Union leadership made clear its adamant opposition to allowing appellants admission to the Union in late 1995 and early 1996, appellants thereafter reasonably sought to pursue internal Union remedies under LIU-NA's agreement with the Department of Justice. Luskin's position clearly suggested that relief would be forthcoming from within the Union. Indeed, arguably the sole unequivocal denial of readmission in the course of appellants' pursuit of internal union remedies occurred only after the suit was brought, when Luskin adopted the leadership's position against readmission in September 1997.

Because appellants pursued internal union remedies after the leadership's true intentions were finally exposed in late 1995/early 1996, the limitations period was tolled thereafter. Section 101 of the LMRDA provides that a union may not require members to exhaust internal reme-

dies for more than four months prior to filing suit. *See* 29 U.S.C. § 411(a)(4) ("No labor organization shall limit the right of any member thereof to institute an action in any court. . . . Provided, That any such member may be required to exhaust reasonable hearing procedures but not to exceed a four-month lapse of time . . . before instituting legal or administrative proceedings.)" The district court did not decide whether tolling was appropriate on this basis because it determined that the maximum period for which the limitations could be tolled was four months, and years had passed after the denial of appellants' initial requests for readmission in 1992 and 1993 before suit was brought. *See Wall* at 8–9.

■ We disagree with the district court's view that 29 U.S.C. § 411(a)(4) sets a four-month *maximum* period of tolling while a plaintiff pursues internal remedies. The intent of this provision is to protect a member's right to seek redress in court and to "prohibit[ ] unions from interfering with their members' right to bring suit." *Johnson v. General Motors*, 641 F.2d 1075, 1079 (2d Cir.1981). It is not the provision's purpose to force members to sue prematurely before they have fully exhausted administrative remedies. Indeed, to read the provision in such a manner impairs both the purpose of the provision to protect members and the "policy of judicial noninterference in union affairs." *Johnson*, 641 F.2d at 1079; *see also Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 79 (2d Cir.1961) (commenting on the "Congressionally approved policy of first permitting unions to correct their own wrongs," and that "no court [should] step in before the union is given its opportunity" to take corrective action that may well "render a member's complaint moot").

Other circuits that have addressed this issue have held that it is appropriate to toll the statute of limitations beyond four months where plaintiffs make bona fide efforts to exhaust internal union remedies. *See Dunleavy v. Local 1617, United Steel-*

*workers of Am.*, 814 F.2d 1087, 1089–90 (6th Cir.1987) (holding that tolling applies to pursuit of internal union remedies even where plaintiff was not "legally required to appeal his claim" internally, citing "the policy ... which encourages the self-governance of labor organizations through the development of internal remedies"); *see also Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 730 (7th Cir.1994) (holding that plaintiff cannot "indefinitely delay resolution of labor disputes merely by bombarding his union with tiresome requests for needless review," but agreeing that tolling the applicable two-year statute of limitations may be proper "during the time in which a union considers an initial but untimely appeal") (internal citations and quotations omitted). The reasoning of these cases applies here, and we believe that the facts warrant tolling.

The LIUNA constitution provides that "[a]ll members are required to exhaust remedies." Constitution, art. III, § 3(h). Wall confirmed below that it was his understanding that he was obligated to exhaust internal union remedies before filing suit in federal court. The record is clear that, when the true purpose of the leadership had been exposed in late 1995/early 1996, appellants sought to resolve the readmission dispute internally, and LIUNA, through Luskin, conducted an investigation of the matter. That investigation, in which appellants' attorney and the Union took part, resulted in a determination by Luskin that appellants were entitled to exercise their readmission right and his "direct[ing]" that the Union permit appellants to do so in July 1996. But the Union resisted, and additional letters were exchanged. For these reasons, we believe that the limitations period was tolled from late 1995/early 1996 at least until appellants brought suit and arguably until Luskin's reversal of position in September 1997.

The district court therefore erred in dismissing appellants' LMRDA cause of action on limitations grounds.

b) *State Law Claims*

 The district court did not err, however, in dismissing appellants' state law claims as preempted by the LMRA. Section 301 of the LMRA preempts claims that are "inextricably intertwined with consideration of the terms of [a] labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). We agree with the district court that, "for preemption purposes, the term 'labor contract' includes union constitutions." *Wall* at 11 (citing *DeSantiago v. Laborers Int'l Union of N. Am., Local No. 1140*, 914 F.2d 125, 128 (8th Cir.1990); *Pruitt v. Carpenters' Local Union No. 225*, 893 F.2d 1216, 1218–19 (11th Cir.1990)); *see also Shea v. McCarthy*, 953 F.2d 29, 31 (2d Cir.1992).

The district court correctly concluded that the "gravamen of [appellants' state law] claims is that the Union, by failing to readmit them as members, has deprived them of the membership benefits and job opportunities that they would have received had they retained their membership status." *Wall* at 11. The state law claims therefore require interpretation of the Union's constitution—"[o]nly by examining the Constitution can a court decide whether the Union's refusal to readmit [appellants] as members was indeed improper." *Wall* at 11. Because the state law claims are clearly "inextricably intertwined" with consideration of Local 230's constitution and the right of union members to be readmitted into the union, they are preempted.

We do note that the state law claims might be reframed as Section 301 claims. However, appellants made no effort to assert them as federal claims even when they were represented by counsel and when the Union had asserted the defense of preemption. We leave to the sound discretion of the district court whether, on

remand, to allow appellants leave to re-plead the claims in question as arising under federal law.

We have considered appellants' other arguments as to the state law claims and find them to be without merit.

CONCLUSION

We reverse the dismissal of the LMRDA claim and affirm the dismissal of the state law claims.