NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0162n.06

No. 09-6500

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 21, 2011**
LEONARD GREEN, Clerk

| | |
|---|---|
| STEVEN C. KITZMANN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| LOCAL 619-M GRAPHIC COMMUNICATIONS | ) |
| CONFERENCE OF THE INTERNATIONAL | ) |
| BROTHERHOOD OF TEAMSTERS; DISTRICT | ) |
| COUNCIL 3 GRAPHIC COMMUNICATIONS | ) |
| CONFERENCE OF THE INTERNATIONAL | ) |
| BROTHERHOOD OF TEAMSTERS, | ) |
| | ) |
| Defendants-Appellees. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

**O P I N I O N**

BEFORE:     ROGERS, SUTTON, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Steven Kitzmann was the compensated president of Local 619 of the Graphic Communications Conference.  Local 619 voted to affiliate with another labor organization, and as part of the terms of the agreement to affiliate, Kitzmann was no longer compensated.  Kitzmann protested, eventually filing suit in state court.  Defendants removed the suit to federal court, arguing that it was preempted under § 301 of the Labor Management Relations Act. The district court agreed that it could exercise jurisdiction over the case under § 301 and granted summary judgment to the Defendants.  Kitzmann now appeals, arguing that the case should have been remanded to state court and, in the alternative, that summary judgment was improper.  Because

we agree that at least some of Kitzmann's claims are preempted by § 301, and because Kitzmann has

waived his argument on the merits of his claims, we **AFFIRM**.

## I. Background

Kitzmann was elected to serve as president of Local 619-M of the Graphic Communications

Conference ("Local 619") for a three-year term ending on December 31, 2006. Local 619 is located

in Louisville, Kentucky and affiliated with the Graphic Communications Conference of the

International Brotherhood of Teamsters ("International"). Local 619's constitution and bylaws set

out the duties of the president, and provide the amount and terms of compensation for the office.

In 2006, Local 619's Merger Committee entered into affiliation discussions with District

Council 3, which is a labor organization that is comprised of several other local unions that are also

affiliated with the International. A conflict emerged about whether to pursue affiliation with District

Council 3. The Merger Committee wished to pursue the merger, while some members of the Local

619 Executive Board, including Kitzmann, opposed or wanted to postpone merger discussions.

Despite the conflict, members of the Merger Committee ordered ballots for a referendum on

affiliation. Kitzmann learned about the order and called the printer to have the ballots destroyed.

Still, over apparent objections of some members of the Local 619 Executive Board, a referendum

on affiliation was held on May 21, 2006. Though there is some dispute about the conduct and

validity of the election, it appears that a majority of voters ratified the affiliation agreement between

the two labor organizations.

The affiliation agreement provided that the provisions located therein "are paramount and

shall supersede and control in the event of any conflict between the Constitution and Laws of District

Council 3 or the Constitution and Laws of Local 619[.]" R. 74-5, Affiliation Agreement, at 1. Moreover, the agreement provided that the District Council 3 constitution (we will use "constitution" to describe a union's constitution *and* bylaws) would supersede and control in the event of any conflict with Local 619's constitution. *Id*. at ¶ 3. One of the terms of the affiliation agreement provided that Local 619 "shall have no employees" pursuant to District Council 3's constitution. *Id*. In lieu of Local 619's having compensated staff, it appears that District Council 3 agreed to create a Louisville office and hire at least one full-time employee — initially from the membership of Local 619 — to serve the area. *Id*. at ¶¶ 3, 4. Thus, District Council 3 contends that under the agreement, Kitzmann would remain president, but the position would no longer be a compensated full-time position. Kitzmann received compensation up until the date of the affiliation agreement, but at that point he ceased receiving the benefits and compensation that he previously received under the Local 619 constitution. Nevertheless, Kitzmann continued performing his full-time duties as president of Local 619, presumably expecting compensation. Roughly three weeks after the referendum, Kitzmann stopped performing those duties and returned to the position that he held before he was elected president of Local 619.

There appears to have been some attempt by Kitzmann to internally resolve his grievances about the affiliation referendum and the cessation of his compensation and benefits. Dissatisfied with the results of that process, Kitzmann filed suit in Kentucky state court on September 13, 2007. Defendants removed the action to federal court on October 3, 2007. After discovery, both parties moved for summary judgment in June 2009. Kitzmann then filed a motion to remand the case to state court in August 2009. The district court denied Kitzmann's motion to remand and motion for

partial summary judgment, and granted Defendants' motion for summary judgment. *Kitzmann v. Local 619-M Graphic Commc'ns Conference of the Int'l Bhd. of Teamsters, et al.*, No. 3:07CV-530-H, 2009 WL 2940202 (W.D. Ky. Sept. 8, 2009). Reasoning that the resolution of all of Kitzmann's claims depended on the analysis of a contract between labor organizations, the district court held that it had jurisdiction over Kitzmann's claims because they were preempted by § 301 of the Labor Management Relations Act ("LMRA"). *Id*. at *2. The district court then analyzed the merits of Kitzmann's claim, holding that the affiliation agreement served to end Kitzmann's compensated employment with Local 619. *Id*. Kitzmann also filed a motion to amend the judgment, which the district court denied. R.87. This appeal followed. On appeal, Kitzmann first argues that his claims were not preempted and should have been remanded to state court. Next, because the district court resolved Kitzmann's claims on the merits, Kitzmann also appeals the district court's grant of summary judgment on his claims.

## II. Analysis

### A. The Motion to Remand

We conduct *de novo* review of a district court's denial of a motion to remand. *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see* 28 U.S.C. § 1441(a), (b). Here, there is no suggestion that there is diversity jurisdiction, so there must be federal-question jurisdiction in order for Kitzmann's claims to be removable. Our review of whether federal-question jurisdiction exists

is governed by the well-pleaded complaint rule, which provides that jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint. *Caterpillar*, 482 U.S. at 392 (citation omitted). This rule recognizes that the plaintiff, as master of the claim, may seek to avoid federal jurisdiction by relying exclusively on state law. *Id*. (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon.") (Holmes, J.)).

Kitzmann's complaint does not explicitly refer to a federal law that provides him a cause of action, but that does not exhaust the bounds of a district court's federal question jurisdiction. For example "when a federal statute wholly displaces the state-law cause of action through complete preemption," the preempted state-law claim arises under federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). And while 28 U.S.C. § 1331 provides a district court general federal question jurisdiction, there are also more specific jurisdiction-conferring provisions, including § 301 of the LMRA, *see* 61 Stat. 156, § 301, *codified at* 29 U.S.C. § 185(a), which both preempts certain state-law contract claims and also confers federal jurisdiction over those claims, *see Textron Lycoming Reciprocating Engine Division, Avco Corp. v. UAW*, 523 U.S. 653, 657 (1998); *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 220 (1985).

## 1. Section 301 Preemption

The rationale undergirding the complete-preemption doctrine is "that where federal preemption is so complete that conflicting state law not only must yield but is effectively extinguished, the only theory of recovery remaining is the federal claim, which takes the place of the state law claim cited in the complaint." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th

Cir. 2003) (citations omitted). Section 301 of the LMRA is one of the few federal statutes that completely preempts state law. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action . . . Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in absence of § 301."). Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has thus held that when "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted). The purpose of § 301 preemption is to promote the peaceable and consistent resolution of labor disputes by authorizing federal courts to fashion a body of uniform federal law for the interpretation of labor contracts. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403–04 (1988).

Of course, this raises the question, what is a "labor contract" for purposes of § 301? Perhaps the most frequent type of § 301 contract is a collective-bargaining agreement, which, in the words of § 301 is a contract "between an employer and a labor organization." *See, e.g., Smith v. Evening News Ass'n*, 371 U.S. 195, 199 (1962). However, the reach of § 301 is not limited to contracts between an employer and a labor organization. Because the Supreme Court has "held that the word

'between' in § 301 refers to 'contracts,' not 'suits,'" contracts between labor organizations are also

§ 301 contracts. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98–99 (1991)

(citation omitted). In *Wooddell*, a union-member plaintiff sued his local union, alleging "that the

constitution of the IBEW requires 'all Local Unions to live up to all collective bargaining

agreements' and that the IBEW Constitution and bylaws of Local 71 'are contracts which are binding

upon Local 71.'" *Id*. at 100; *see also id.* at 96 (describing the plaintiff as bringing suit against a local

for "violations of the IBEW Constitution and the bylaws of Local 71, which were alleged to

constitute breaches of contract redressable under § 301 of the LMRA and state law"). Noting that

"union constitutions are an important form of contract between labor organizations" the court held

that it was "clear in this case that petitioner charged a violation of a contract between two unions

within the meaning of § 301." *Id*. at 100–01; *see also United Ass'n of Journeymen & Apprentices

v. Local 334*, 452 U.S. 615, 619–24 (1981) (noting that a union constitution is a "fundamental

agreement of association" and the "enforcement of the terms of union constitutions — documents

that prescribe the legal relationship and the rights and obligations between the parent and affiliated

locals — would contribute to the achievement of labor stability").

## 2. Kitzmann's Claims

With these precepts in mind, we turn to whether Kitzmann's claims are preempted. Because

"[§]301 governs claims founded directly on rights created by [labor contracts], and also claims

'substantially dependent on analysis of a [labor contract],'" *Caterpillar*, 482 U.S. at 394, our Court

has created a two-step test for determining whether a plaintiff's claims are preempted by § 301:

First, courts must determine whether resolving the state-law claim would require

>  interpretation of the terms of the [labor contract]. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the [labor contract], or instead by state law. If the rights were created by the [labor contract], the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301.

*Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004) (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)).

Here, the district court appears to have found that all of Kitzmann's claims are preempted by § 301. Kitzmann's claims can be roughly divided into two categories. The first category, Counts I–IV, are claims for declaratory relief that generally attack the validity of the affiliation referendum and the results that flowed from the referendum. The next category, Counts V–VII, are claims for breach of the employment contract that Kitzmann alleges was created by the Local 619 constitution, and claims for damages that flow from that alleged breach. On appeal, Kitzmann states that he has "abandoned" his claims for declaratory relief and only appeals the district court's judgment that the other claims, Counts V–VII, are preempted by § 301. Appellant Br. at 1. Kitzmann hopes that we will look only to whether there is federal jurisdiction over the breach of contract claims.[1] *Id*. at 5.

---

[1]We have not addressed whether the holding of *Wooddell* applies to claims for breach of a local union constitution. Prior to *Wooddell* we held that a suit by a union member for breach of a local union constitution does not fall within the scope of § 301. *Corea v. Welo*, 937 F.2d 1132, 1144–45 (6th Cir. 1991). However, the rationale behind that holding, that a union member could *never* sue a union for breach of a union constitution under § 301, was abrogated by *Wooddell*. 502 U.S. at 102–03.

Since *Wooddell*, some circuits have held that § 301 does not confer federal jurisdiction to suits for breach of a local union constitution. *See Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285 (7th Cir. 1996); *Bermingham v. Castro*, No. 98-15859, 1999 WL 644342, at *1 (9th Cir. Aug. 24, 1999). Other circuits have held that § 301 does confer federal jurisdiction for such suits. *See Lee v. Cytec Industries, Inc.*, 460 F.3d 673, 679–80 (5th Cir. 2006); *Wall v. Construction & General Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir. 2000). For the reasons explained below, we do not think it is necessary to reach this question.

But there is nothing in the record to show that Kitzmann "abandoned" or dismissed these claims at the district court. This might be a creative way of attempting to defeat federal jurisdiction, but it is not a tactic that we will entertain. A claimant cannot attempt to defeat jurisdiction (and summary judgment) on appeal by "abandoning" the claims that the claimant worries might have established jurisdiction in the first place. Instead, we determine whether federal jurisdiction exists "by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201 (6th Cir. 2004) (citing *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2000)).

Looking to Kitzmann's complaint, Count I seeks a declaration that the Defendants have refused to hear Kitzmann's grievances, thereby waiving any requirement to exhaust internal grievance procedures. This claim rests on Kitzmann's allegation that District Council 3 and the International "violated" Section 17 of the International constitution by neither investigating nor holding a hearing on Kitzmann's challenge to the affiliation. R. 1-2, Complaint, at ¶ 27, 30, 31. Count II seeks a declaration that the affiliation election was void. Kitzmann rests this claim on "District Council 3 and the [International's] *failure* to follow their own constitutions," which he alleges "results in invalidation of the affiliation and merger agreement," *id*. at ¶ 32 (emphasis added), as well as District Council 3's preparation of the ballots in contravention to Local 619's bylaws, *id*. at ¶ 16. Count III seeks a declaration that the Local 619 constitution was not amended, even if the affiliation agreement was approved. This claim rests on Kitzmann's assertion that the Defendants' "failure to follow" the procedural requirements of the District Council 3 constitution and Local 619 constitution results in the "invalidation" of any amendment or modification to the Local 619

constitution. *Id*. at ¶¶ 38, 39, 42, 44. Count IV seeks a declaration that Kitzmann was improperly denied compensation as president of Local 619, and that the affiliation agreement and District Council 3 constitution do not serve to end his term as compensated president. This claim rests on Kitzmann's assertion that the District Council 3 constitution does not prohibit compensation of local officers, *id*. at ¶ 51, *and* prevailing on either Count II or Count III.

Because the International constitution, the District Council 3 constitution and the affiliation agreement are all "contracts between labor organizations," they fall within the scope of § 301. *Wooddell*, 502 U.S. at 100. On the face of Kitzmann's complaint, these claims allege that the Defendants "violated" or "failed to follow" the provisions of one or more of these § 301 contracts. In other words, Kitzmann has alleged that the Defendants breached these § 301 contracts. There is certainly "federal jurisdiction under § 301[] based on the alleged violation of a contract between labor organizations." *Id*. at 103. The district court, therefore, at least had jurisdiction over Count I and II under § 301. All of the remaining claims, which arose out of the same series of events—the affiliation election and fallout—fell within the district court's supplemental jurisdiction, even if they were not preempted. *See* 28 U.S.C. § 1367(a). Because at least two Kitzmann's claims are preempted by § 301, and his remaining claims fell within the court's supplemental jurisdiction, we AFFIRM the district court's denial of the motion to remand.

**B. The Merits of Kitzmann's Claims**

Rather than dismissing Kitzmann's claims, the district court recast the claims as § 301 claims and resolved them on the merits. The district court granted summary judgment to the Defendants, concluding that under basic contract law analysis—whether analyzed under § 301 or state law—the

affiliation agreement properly ended Kitzmann's term as compensated president of Local 619. *Kitzmann*, 2009 WL 2940202, at *2. We conduct *de novo* review of a district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On appeal, Kitzmann argues: "The contract between Kitzmann and Local 619-M was enforceable throughout the full term" and "[t]he contract may not be amended or eliminated by amending the [union] constitution." Appellant Br. at 11. Kitzmann provides no support for this argument. He has not pointed to any terms in any document that would suggest that he was required to be compensated for the entire term or that he was otherwise not an at-will employee. Likewise, Kitzmann has not pointed to any terms in any document that would suggest that the Local 619 constitution could not be amended or terminated by the affiliation agreement. Because Kitzmann has not developed this argument, we consider it waived on appeal. *See Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citations and internal quotation marks omitted).

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.