**John MYERS, et al.,**
**Plaintiffs-Appellants,**

v.

**UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, et al., Defendants-Appellees.**

**No. 1261, Docket 81–7737.**

United States Court of Appeals,
Second Circuit.

Heard June 16, 1982.

Decided July 15, 1982.

Philip Frankel, Syracuse, N. Y. (Crystal, Manes & Rifken, P. C., Syracuse, N. Y., on brief), for plaintiffs-appellants.

Jules L. Smith, Syracuse, N. Y. (Mimi C. Satter, Blitman & King, Syracuse, N. Y., William A. McGowan, Gen. Counsel, United Broth. of Carpenters & Joiners of America, Washington, D. C., on brief), for defendants-appellees.

Before NEWMAN and PIERCE, Circuit Judges, and KNAPP,* District Judge.

NEWMAN, Circuit Judge:

This is an appeal from a judgment entered September 11, 1981 in the Northern District of New York (Howard G. Munson, Chief Judge), dismissing for lack of subject matter jurisdiction a complaint alleging denial of rights protected by Title I of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C.

---

* The Honorable Whitman Knapp of the United States District Court for the Southern District of New York, sitting by designation.

§§ 411–415 (1976). The case potentially implicates issues concerning the relationship between Titles I and IV of the LMRDA, *see Schonfeld v. Penza,* 477 F.2d 899 (2d Cir. 1973), but we conclude that the judgment should be affirmed simply because the Title I claim fails on its merits.

The suit was brought by John Myers, his brother Bruce, and other members of defendant Local Union No. 12 of the United Brotherhood of Carpenters & Joiners of America. They sued the Local and the Brotherhood as a result of the following events occurring in the summer of 1980. On June 7, 1980, John Myers was elected business representative of the Local, defeating by two votes his closest challenger, Neil Daley, in a four-man field. Daley complained to the Brotherhood that the election was invalid because six members of the Local should not have been allowed to vote since they were "contracting members," ineligible to vote under the constitution of the Brotherhood.[1] The Brotherhood's general president authorized Joseph Lia, a member of the executive board, to investigate the matter. Lia concluded that four of the challenged voters, including Bruce Myers, were ineligible as contracting members and, in light of the two-vote margin of victory, ordered a second election between the two highest finishers in the first election. In the second election held on August 23, 1980, Daley defeated John Myers by 85 votes.

The complaint in the District Court alleged that the Brotherhood's rule barring "contracting members" from voting violates Title I of the LMRDA, specifically § 101(a)(1), 29 U.S.C. § 411(a)(1), in that (a) the Brotherhood's "contracting member" rule rendered members in good standing ineligible to vote, (b) the rule lacked a definition of "contracting member," and (c) the Brotherhood's factual determination that Bruce Myers and three other voters were "contracting members" was "arbitrary," "capricious," and "discriminatory." Chief Judge Munson dismissed the complaint for lack of subject matter jurisdiction. He noted that Title IV of the LMRDA vests the Secretary of Labor with jurisdiction to investigate allegations of irregularities in union elections and to initiate lawsuits in a district court, LMRDA § 402, 29 U.S.C. § 482, a remedy that the Act specifies is exclusive for challenging an election already conducted, *id.* § 403, 29 U.S.C. § 483. Judge Munson then considered and declined to follow the Ninth Circuit's decision in *Kupau v. Yamamoto,* 622 F.2d 449 (9th Cir. 1980), which upheld a post-election challenge brought under Title I in a district court by a union member elected to office and later declared ineligible to hold the office. Judge Munson viewed our decision in *Schonfeld v. Penza, supra,* as permitting a Title I suit alleging matters also violative of Title IV only when the action of the union was part of an attempt to suppress dissent within the union. Concluding the plaintiffs had not alleged facts of the sort contemplated by our decision in *Schonfeld,* Judge Munson ruled that the plaintiff's complaint, even if it stated a Title I violation, was a matter for consideration by the Secretary of Labor under Title IV.

*Schonfeld* involved a union's attempt to discipline an officer and rule him ineligible from holding office. Both the officer and his supporters sued, alleging violations of Title I's guarantee of equal voting rights, LMRDA § 101(a)(1), 29 U.S.C. § 411(a)(1), and free speech, *id.* § 101(a)(2), 29 U.S.C. § 411(a)(2). We ruled that the voting rights claim was without merit because there had been no discrimination against the members; each retained the right to nominate and vote for any eligible candidate. 477 F.2d at 903. We upheld the free speech claim, and in the context of that claim, expressed the view that Title I claims could be pursued, notwithstanding overlap with Title IV, only upon evidence of "a purposeful and deliberate attempt by union officials to suppress dissent within the un-

---

1. Section 44J of the Brotherhood's constitution provides: "A contracting member shall not be eligible as an officer, Business Representative, or delegate of a Local Union or eligible to vote for officers, Business Representative(s), and delegates and shall not be eligible to vote on the wage question."

ion," *id.* at 904. *See also Newman v. Local 1101, Communications Workers of America,* 570 F.2d 439, 445–46 (2d Cir. 1978).

In this case it is not necessary and indeed would be inappropriate to determine the extent to which the exclusivity provision of Title IV might preclude the exercise of district court jurisdiction over a well-pleaded claim alleging a discriminatory denial of voting rights in violation of Title I. Nor need we determine whether the exclusivity provision of Title IV applies to a suit such as this in which the essential relief sought is confirmation of the results of an election, even though the necessary effect of such relief would be to invalidate the results of a subsequent election. We leave such matters for another day because it is clear that the plaintiffs have not presented a meritorious Title I claim.

Section 101(a)(1) assures every union member "equal rights" to vote, subject to "reasonable rules and regulations" in a union's constitution and bylaws. "Plainly, this is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon v. Harvey,* 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964). The Brotherhood's rule disqualifying members from voting when they work as contractors is not a discrimination under Title I. The rule applies to all members, and falls safely within the wide area recently marked out by the Supreme Court for rules that are "reasonable" under Title I. *United Steelworkers of America v. Sadlowski,* —— U.S. ——, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982). Nor does a discrimination arise from the absence of a precise definition of "contracting member" in the Brotherhood's constitution. The defendants' papers in support of their motion for summary judgment included a statement of the Brotherhood's general president defining "contracting member" as "a member who contracts for the performance of construction, alteration, repair or related work

and has employed one or more craftsmen to perform or assist in the performance of such." Plaintiffs presented no affidavits to raise a factual issue concerning the uniform use of this definition. *See Gurton v. Arons,* 339 F.2d 371, 374 (2d Cir. 1964) ("As long as no claim is made that provisions of the constitution and by-laws are being applied in such a way as to deny equality in voting, there is nothing in Section 101 which authorizes consideration of those documents.").

Equally unavailing is plaintiffs' final claim that Bruce Myers was incorrectly determined to be a contracting member at the date of the first election. Even if the Brotherhood's factfinding was mistaken, that circumstance would not establish discrimination in the absence of facts indicating that some identifiable group within the Local was erroneously being branded as "contracting members" as a pretext for accomplishing a discriminatory denial of their right to vote. In opposing defendants' motion for summary judgment, plaintiffs presented no facts concerning the status of three of the four members found ineligible to vote, and even the affidavit of Bruce Myers does not unequivocally aver that he was not a contracting member on the date of the first election. At most, plaintiffs have put in issue the correctness of the factfinding as to Bruce Myers' status, but they have raised no genuine issue of fact concerning the existence of discrimination in violation of § 101(a)(1).[2] In these circumstances, the District Court, had it assessed the merits, would have been obliged to grant the defendants' motion for summary judgment, and for that reason we affirm the judgment in favor of the defendants.

---

**2.** After the dismissal by the District Court, the Department of Labor, acting upon a complaint by John Myers, concluded that at least two of the Local's members had been properly ruled ineligible to vote at the first election and that the result of that election had therefore properly been vacated.