John J. PANCZYKOWSKI, Mary Panczykowski, Charlotte E. Fasciana, Ignatius Fasciana, Everett Caci, Salvatore Caci, and Peter Capitano, Plaintiffs–Appellants,

v.

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA; Robert D. Luskin, Individually and as the General Executive Board Attorney of the Laborers' International Union of North America; Comey, Boyd & Luskin, as the General Executive Board Attorneys of the Laborers International Union of North America; Arthur A. Coia, General President of Laborers' International Union of North America; Daniel A. Braun, individual-

ly and as General Executive Board Attorney of the Laborers' International Union of North America; John J. Curran, individually and as General Executive Board Attorney of the Laborers' International Union of North America; Defendants–Appellees,

Daniel A. Braun and John J. Curran, Jr., Consolidated–Defendants–Appellees.

Nos. 00–7531L, 00–7539, 00–7540, 00–7541, 00–7549.

United States Court of Appeals, Second Circuit.

Jan. 26, 2001.

Edward J. Schwendler, III, Esq.; Law Offices of Eugene C. Tenney, Esq., Buffalo, NY, for appellants John J. Panczykowski, Mary Panczykowski, Charlotte E. Fasciana, and Ignatius Fasciana.

Robert H. Perk, Esq. Buffalo, NY, for appellants Everett F. Caci, Salvatore Caci, and Peter Capitano.

Lawrence J. Vilardo, Esq.; Connors & Vilardo, Buffalo, NY, for appellee Laborers' International Union of North America.

Present Van GRAAFEILAND, McLAUGHLIN and KATZMANN, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of the district court be AFFIRMED.

Plaintiffs-appellants appeal from the orders and judgments of the United States District Court for the Western District of New York (Arcara, *J.*), which dismissed their state claims for defamation as preempted by federal labor law.

Plaintiffs are former members or officials of the Buffalo area local chapter of the Laborers' International Union of North America ("LIUNA"). In 1995, in an attempt to forestall the filing of a RICO complaint against the union by the Department of Justice, LIUNA's General Executive Board ("GEB") amended the union's constitution to include an Ethics and Disciplinary Procedure ("EDP"). The EDP was designed to respond to the Justice Department's allegations that LIUNA officers had permitted the mafia to manipulate union affairs, including the management of Local 210 in Buffalo.

The EDP authorized the drafting of an Ethical Practices Code ("EPC"), prohibited union staff and employees from engaging in "barred conduct," and created an administrative mechanism for the investigation and prosecution of allegations of disciplinary infractions. "Barred conduct" is defined in the text of the EDP to include "knowingly associating with any member or associate of the organized crime syndicate known as La Cosa Nostra." The EDP also includes a three-part definition of "knowingly associate," and the term was similarly defined by the EPC.

The new quasi-judicial positions created by the EDP included a GEB Attorney, charged with investigation and prosecution of charges of "barred conduct" or violations of federal or state law as well as recommending discipline for such infractions. The EDP also authorized the GEB Attorney "to impose and review the imposition of trusteeships, over any district council, local, or other entity within the Union." Under the EDP, the GEB Attorney was also required to "prepare reports concerning ... the progress he or she is making towards achieving the objectives and purposes of this Disciplinary Procedure, to be published on a bimonthly basis in *The Laborer*," an internal union magazine.

Following passage of the EDP and an agreement with the government, under which DOJ agreed to suspend filing of the RICO complaint and consent decree while LIUNA implemented reforms, the Inspector General commenced an investigation of the influence of organized crime in union locals, Local 210 among them. In December 1995, the GEB Attorney filed a Complaint for Trusteeship seeking the appointment of a trustee to run Local 210 in order to excise the influence of organized crime. The complaint listed the plaintiffs as individuals with organized crime connections who manipulated union affairs in order to benefit the Buffalo family of La Cosa Nostra. The GEB Attorney distributed the complaint to all local members with two explanatory letters as required by LIUNA Const., art. IX, § 7. Notice regarding the trusteeship complaint also appeared in *The Laborer* as required by the EDP. Members of the Buffalo news media also acquired copies of the complaint. Negotiations with Local 210 resulted in the local ceding control of operations to a supervisor appointed by LIUNA.

The GEB Attorney filed disciplinary charges against plaintiffs in June 1996. The charging document stated that the named individuals had committed "barred conduct" under the EDP having "knowingly associated" with members of the Buffalo family of La Cosa Nostra because plaintiffs "have been associates of" the family. Pursuant to the directive of the EDP, a report regarding the disciplinary action appeared in *The Laborer*.

Plaintiffs brought the present actions in the New York Supreme Court for Erie County in 1996 and 1997, asserting multiple counts of defamation based upon the allegations of mob connections contained in the complaint for trusteeship, disciplinary charges, and related notices. The suits named LIUNA, its General President, the GEB Attorney, the GEB Attorney's former law firm, and two members of the GEB Attorney's staff as defendants. Plaintiffs' claims may be divided into two groups. One group of claims alleges defamation based upon the allegations contained in the complaint for trusteeship and as republished in the letters to the union membership and *Laborer* notices. An additional count concerns statements made by the GEB Attorney to the press in which he said, "I stand behind every word in that Complaint for Trusteeship."

The second group of claims is based upon the allegations contained in the disciplinary charges and the report of them in *The Laborer*. One of the counts concerns statements made by a member of the GEB Attorney's office in which he told news media, in reference to the disciplinary charges, that "[t]hese are people who we feel have played a part in the corruption of Local 210."

Defendants removed all of the suits to federal court in the Western District of New York. Judge Arcara denied plaintiffs' motions to remand, holding that at least two of the counts were preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because the truth or falsity of the allegations in the complaint for trusteeship and disciplinary charges depended upon interpretation of terms defined by the LIUNA constitution, including the EDP and EPC. In April of 2000, the district court then dismissed all of the remaining counts as preempted by § 301 because they too necessitated construction of the LIUNA constitution and because the LIUNA constitution required defendants to make the statements forming the basis of plaintiffs' claims.

■■■ We agree with the district court that all of the plaintiffs' claims are preempted by § 301. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, confers jurisdiction in the federal courts for "[s]uits for violation of contracts between ... labor organizations." Suits based upon the terms of union constitutions fall within the sweep of § 301. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). In order to effectuate the policy goal underlying § 301 of ensuring uniform and predictable federal resolution of labor disputes, the Supreme Court has held that "the preemptive effect of § 301 must extend beyond suits alleging contract violations" and embrace "suit[s] alleging liability in tort." *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The fact that the state cause of

action may provide the only remedy available to the aggrieved party should not affect the preemption analysis. *Caterpillar,* 482 U.S. at 391 n. 4.

 As this Court has observed, "[t]he principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied." *Foy v. Pratt & Whitney Group,* 127 F.3d 229, 233 (2d Cir.1997). On the one hand, the Court must consider "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract," *Allis Chalmers,* 471 U.S. at 213, or whether the tort analysis is "substantially dependent" upon analysis of the labor agreement, *id.* at 220. *See also Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (preempting state claim where "resolution of a state-law claim depends upon the meaning" of labor agreement). On the other hand, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

Under the circumstances, we believe that resolution of plaintiffs' claims will require more than mere consultation to the union constitution and that these claims are necessarily "inextricably intertwined with consideration of the terms of the labor agreement." *Allis Chalmers,* 471 U.S. at 213. Starting with the elements of the plaintiffs' state cause of action, *see Lingle,* 486 U.S. at 406–07, it is significant that "[t]he essence of the tort of libel is the publication of a statement about an individual that is both false and defamatory." *Brian v. Richardson,* 87 N.Y.2d 46, 50–51, 660 N.E.2d 1126, 1129, 637 N.Y.S.2d 347, 350 (1995). Because "falsity is a *sine qua non* of a libel claim," *id.* at 51, 660 N.E.2d at 1126, 637 N.Y.S.2d at 350, resolution of plaintiffs' claims will necessitate construction of the EDP and EPC since the allegations contained in the complaint for trusteeship and disciplinary charges have meaning only in the context of those provisions. The GEB attorney made the subject allegations pursuant to a grant of authority in the LIUNA constitution which also specifically defined the prohibited conduct of which the plaintiffs were accused. The only way to determine whether the central allegations of "barred conduct" are true is to interpret that term as used in the EDP and EPC.

Having concluded that the district court properly held plaintiffs' claims to be preempted by § 301, the district court's dismissal of the claims was appropriate. *See Allis Chalmers,* 471 U.S. at 220 ("We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." (internal citation omitted)).

For the reasons set forth above, the judgments of the district court are hereby AFFIRMED.