**LOCAL UNIONS 20, et. al., Plaintiffs,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et. al, Defendants.**

**John Harkin, Joseph Lauer and William Lebo as members of the United Brotherhood of Carpenters and Joiners of America, Plaintiffs,**

v.

**The United Brotherhood of Carpenters and Joiners of America, General President Douglas McCarron and the Same Labor Organization, Defendants.**

**Nos. 97 Civ.5538 CSH, 98 Civ.1778 CSH.**

United States District Court,
S.D. New York.

Aug. 15, 2002.

John Harkin, pro se.

Joseph Lauer, pro se.

William Lebo, pro se.

Greenberg Traurig, LLP, New York City, Jeffrey B. Sklaroff, of counsel, for Defendants.

### MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Plaintiffs John A. Harkin, Joseph Lauer, Jr., and William S. Lebo, appearing *pro se*, brought the action captioned 98 Civ. 1778 against defendants the United Brotherhood of Carpenters and Joiners of America ("UBC"), its General President, Douglas J. McCarron, and its General Executive Board. Plaintiffs are rank and file members of the UBC, as well as members of local unions affiliated with the District Council of New York City and Vicinity of the Brotherhood of Carpenters and Joiners of America ("District Council" or "NYCDCC"). Plaintiffs' action was consolidated with the other captioned action, bearing docket number 97 Civ. 5538. *See Local Unions 20 v. UBC*, No. 97 Civ. 5538, 1998 WL 690185 (S.D.N.Y. Oct.1, 1998).

Plaintiffs' claims are presently asserted in their Second Amended Complaint ("SAC"), dated August 17, 2001. The SAC contains six counts. Defendants now move to dismiss the entire SAC or alternatively for partial summary judgment dismissing Counts One and Two. Plaintiffs resist that motion and cross-move for summary judgment on all their claims.

The background of this litigation and the events giving rise to the present motions

may be found in the Court's prior opinions, most particularly *Local 20 v. UBC*, Nos. 97 Civ. 5538, 98 Civ. 1778, 2001 U.S. Dist. LEXIS 11209 (S.D.N.Y. Aug. 3, 2001). Familiarity with those opinions is assumed. There is no need to reiterate the litigation history. I turn directly a summary of the plaintiffs' claims as pleaded in the SAC.

## I. PLAINTIFFS' CLAIMS

The claims asserted by plaintiffs in the SAC's six counts principally allege that defendants violated several provisions of the Labor–Management Reporting and Disclosure Act ("LMRDA"). Plaintiffs also rely on provisions of the UBC Constitution, the Fourteenth Amendment to the United States Constitution, the Voting Rights Act, the Uniform Commercial Code ("UCC"), and the common law.

Plaintiffs' claims may be summarized as follows:

Count One alleges that Sections 6A, 6D, 10H, 10J, 10K, 15F, 26H, 26I and 62 of the UBC Constitution as amended January 1, 1996, as well as further amendments made at the 38th General Convention of the UBC in August 2000 and effective December 1, 2000, are void "because they were adopted without notice to the Plaintiffs and other rank and file members of the UBC, thus denying them their right, under section 101(a) of the LMRDA, to participate in deliberations and is discriminatory to the rank and file membership, because it denies the members their rights under section 101(a)(1) of the LMRDA, [29] U.S.C. 411(a)(1)." SAC ¶ 28. Count One also contains references to sections 103 and 101(b) of the LMRDA.

Count Two alleges that the same sections of the UBC Constitution and amendments render the Constitution "completely one sided and shockingly unfair to the rank and file members because it gives complete dictatorial powers to the General President and General Executive Board with no meaningful or real system of checks and balances," SAC, ¶ 33, thereby rendering the UBC Constitution "unconscionable as a contract between the UBC and the local union rank and file members with little or no ability to provide meaningful input as to the actions and direction of the UBC," SAC ¶ 35. Plaintiffs rely on the principle of unconscionability declared in § 2–302 of the Uniform Commercial Code ("UCC"). Plaintiffs also appear to rely upon common law concepts of contractual unconscionability, SAC ¶ 35. Additionally they allege violations of the Voting Rights Act of 1965, 24 U.S.C. § 173(a), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Id.* Count Three alleges that "[t]he independent ratification by the UBC of collective bargaining agreements without ratification from the local unions of District Council" violates Section 42J of the UBC Constitution as amended January 1, 1996 and at the 38th General Convention, and also "violates section 101(a)(1) of the LMRDA, 29 U.S.C. Sec. 411(a)(1)." SAC ¶¶ 40, 41.

Count Four alleges that the defendants' denial of "the right to hold elections for business representatives and business managers throughout the Brotherhood" violates § 101(a)(1) of the LMRDA, the Voting Rights Act of 1965, the doctrine of unconscionability articulated in § 2–302(1) of the UCC, and the UBC Constitution. SAC ¶ 46. In support of that claim, plaintiffs allege that a business representative "should be considered an officer" and "should be an elected one covered under [29] U.S.C. Sec. 411(a)(1) and 29 C.F.R. 452.14." SAC ¶ 48.

Count Five alleges that defendants violated section 303(a)(2) of the LMRDA, 29 U.S.C. 463(a)(2), "when they transferred moneys of the NYCDCC in the form of six cents per member worked hour to the

UBC supplemental fund during the trusteeship they imposed on the NYCDCC though contracts made for the NYCDCC and affiliated local unions with contractors and contractor associations by the defendants and trustees appointed by the defendants." SAC ¶ 52. Plaintiffs also assert that this conduct violated § 101(a)(1) of the LMRDA and was unconscionable within the ambit of § 2–302(1) of the UCC.

Count Six alleges that the sections 17C, 68, 10A and 59B of the UBC Constitution violate section 101(a)(1) of the LMRDA because they "allow[ ] for an unfair representation procedure for General Elections and for the General Operation of the UBC," in that the procedures for voting at the General Convention contained in the Constitution "unduly restrict free choice among candidates," resulting in "the entrenchment of an autocratic incumbent administration...." SAC ¶¶ 57–60. Plaintiffs make comparable claims with respect to the UBC Constitution's provisions for enacting amendments.

## II. THE PARTIES' MOTIONS

### A. DEFENDANTS' MOTION

Defendants move to dismiss all six counts of the SAC, either under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction, or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, defendants move for partial summary judgment under Rule 56 dismissing as time barred those portions of Count One and Count Two predicated upon certain of the provisions which appear in the 1996 UBC Constitution. In addition, defendants move to dismiss Counts Four and Five under Rule 19(a) for failure to join the District Council as an indispensable party.

### B. PLAINTIFFS' CROSS–MOTION

Plaintiffs cross-move for summary judgment "on the above captioned case in its entirety." Notice of Motion dated November 6, 2001.

### C. THE RECORD TO BE CONSIDERED ON THE MOTIONS

As noted, defendants have moved for partial summary judgment on Counts One and Two of the SAC, limiting their contentions to the statute of limitations. In contrast, plaintiffs have cross-moved for summary judgment on all their claims. Plaintiffs have also submitted voluminous documents as exhibits. Plaintiffs first submitted those exhibits purportedly in support of their SAC, a procedurally inappropriate effort. Plaintiffs also wish the Court to consider the exhibits as part of their opposition to defendants' motions, as well as supporting their cross-motion for summary judgment.

Given that the case is before the Court on cross-motions for summary judgment, there is no need to convert them to that status by invoking the last sentence of Rule 12(b)(6). However, it does not follow that I can consider the contents of all plaintiffs' exhibits as part of the record. On a motion for summary judgment the Court's consideration is limited to factual material that would be admissible in evidence at the trial. *See* Rule 56(c) (motion for summary judgment will be granted "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."); Rule 56(e) ("Supporting and opposing affidavits must be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). To the extent that resolution of these motions requires the Court to address questions of fact, the

plaintiffs' submissions, and those of defendants as well, are subject to these important limitations.

## III. DISCUSSION

### A. PLAINTIFFS' CLAIMS BASED ON SECTION 101(A)(1) OF THE LMRDA

Several counts in the SAC allege violations of section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). But it is clear that the Court lacks subject matter jurisdiction to consider those claims.

■ Section 101(a)(1) forms a part of Title I of the LMRDA, which "has been called a 'Bill of Rights' that guarantees union members the equal right to vote and participate in union decisions, the right to free speech and assembly, and protection from improper discipline by union officers." *Members for a Better Union v. Bevona*, 152 F.3d 58, 63 (2d Cir.1998). Section 101(a)(1) provides in full:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Section 102 of the LMRDA, 29 U.S.C. § 412, confers subject matter jurisdiction upon the district courts over civil actions brought by "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter . . ."

While § 101(a)(1) is cast in broad terms, controlling case law narrows its application. The seminal case of *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), posed the question whether restrictions in the union's constitution and bylaws on who could be nominated for union office violated § 101(a)(1). Answering that question in the negative, the Court reasoned that § 101(a)(1) "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote. . . . The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others." 379 U.S. at 139, 85 S.Ct. 292. Accordingly the district court "was without jurisdiction to grant the relief requested here," *id.* Two Justices, concurring in the result, expressed the view that the case should be dismissed "for failure to state a claim for relief." *Id.* at 147, 85 S.Ct. 292.

In later decisions citing and following *Calhoon*, the Second Circuit has made it plain that a complaint asserting violation of § 101(a)(1) but failing to allege the sort of discrimination articulated in *Calhoon* must be dismissed for lack of subject matter jurisdiction. *See, e.g., Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 471–72 (2d Cir.1999) ("[P]laintiffs in this case have failed to state a valid LMRDA claim. Plaintiffs' Second Amended Complaint, while chock full of alleged misconduct by Union officials and Times's foremen, contains no allegation that plaintiffs were the subject of discrimination or were denied a right to vote that the Union granted to other members"; case remanded "(for the district court to dismiss the claim for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).")). *Bevona*, 152 F.3d at 63, 65 ("Following *Calhoon*, we have read § 101(a)(1) to prohibit the *unequal* treatment of union members with respect to their voting rights. . . . To be viable, a claim under § 101(a)(1) must therefore allege the denial of some privilege or right to vote which the union has granted to others."); *Myers v. United Brotherhood of Carpenters and Joiners of*

*America,* 684 F.2d 225, 227 (2d Cir.1982) (Newman, *Ct. J.)* (where union rule disqualifying members from voting when they work as contractors "applies to all members," then "[e]ven if the Brotherhood's factfinding was mistaken, that circumstance would not establish discrimination in the absence of facts indicating that some identifiable group within the Local was erroneously being branded as 'contracting members' as a pretext for accomplishing a discriminatory denial of their right to vote.... At most, plaintiffs have put in issue the correctness of the factfinding as to Bruce Myers' status, but they have raised no genuine issue of fact concerning the existence of discrimination in violation of § 101(a)(1).").

The SAC of plaintiffs at bar fails to pass muster under the rule of these cases, which are binding upon this Court. Plaintiffs nowhere allege that any defendant or the UBC or its constitution and bylaws have singled them out for discriminatory treatment, or that they have been denied rights or privileges which are extended to other union members. On the contrary: plaintiffs repeatedly proclaim that they seek to right wrongs visited upon the entire UBC "rank and file"; and, while their SAC is "chock full of alleged misconduct" by defendants, allegations of the sort of discrimination required by *Calhoon* and its progeny to support a § 101(a)(1) claim are entirely lacking. I do not doubt the sincerity with which plaintiffs charge defendants with misconduct; but district courts are courts of limited jurisdiction, and §§ 101(a)(1) and 102 of the LMRDA do not confer subject matter jurisdiction upon this Court to consider any of the claims that plaintiffs assert under § 101(a)(1).

## B. PLAINTIFFS' CLAIMS OF CONTRACTUAL UNCONSCIONABILITY

In attacking the UBC Constitution and the conduct of the individual defendants, several counts in the SAC include claims based upon the doctrine of unconscionability in contracts. Plaintiffs rely upon § 2–302(1) of the UCC and the common law.

■ Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, confers subject matter jurisdiction upon the district courts to consider "[s]uits for violation of contracts between an employer and a labor organization in an industry affecting commerce as defined in this chapter, or between any such labor organizations ..." "A union constitution is a contract between labor organizations. As such, in an action brought under 29 U.S.C. § 185, it may be enforced like any other contract." *Local 1052 et al. v. Los Angeles County District Council of Carpenters et al.,* 944 F.2d 610, 613 (9th Cir. 1991) (citation omitted). In *Local 1052* dissident UBC locals invoked § 301 of the LMRA to assert claims that the UBC-directed consolidation of local carpenters' unions affiliated with the Los Angeles County District Council violated section 6A of the UBC Constitution.

Defendants contend that plaintiffs' claim of unconscionability based upon the UCC is preempted by § 301 of the LMRA. In *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court held that the policies underlying § 301 "require that the relationships created by a collective bargaining agreement be defined by application of an evolving federal common law grounded in national labor policy," so that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* at 210–11, 105 S.Ct. 1904. (citations and internal

quotation marks omitted). Applying that rule, the Court in *Allis–Chalmers* held that § 301 of the LMRA preempted a state law action alleging bad faith in handling a claim under a disability insurance plan included in a collective bargaining agreement.

It is well established in the Second Circuit that "for preemption purposes, the term 'labor contract' includes union constitutions." *Wall v. Construction & General Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir.2000) (citations omitted) (holding state law claims arising out of union's refusal to readmit union members preempted by § 301); *see also Panczykowski v. Laborers' International Union of North America*, 2 Fed.Appx. 157, 160 (2d Cir.2001) ("Section 301 of the [LMRA] confers jurisdiction in the federal courts for '[s]uits] for violation of contracts between ... labor organizations.' Such suits based upon the terms of union constitutions fall within the sweep of § 301.") (citation omitted) (holding union members' state law claims for defamation against union preempted). While "[t]he principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied," *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir.1997), § 301 preemption is mandated where a plaintiff's state law claims "are necessarily 'inextricably intertwined with consideration of the terms of the labor agreement.'" *Panczykowski*, 2 Fed.Appx. at 161 (citing and quoting *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904). Preemption clearly applies to the present plaintiffs' claims of unconscionability to the extent those claims are based solely upon the UCC or the common law because plaintiffs challenge the validity of the UBC Constitution itself.

However, that conclusion does not end the inquiry. The UBC's brief includes the language from *Wall* quoted *supra*, but omits what Chief Judge Winter said next:

> We do note that the state law claims might be reframed as Section 301 claims. However, appellants made no effort to assert them as federal claims even when they were represented by counsel and when the Union had asserted the defense of preemption. We leave to the sound discretion of the district court whether, on remand, to allow appellants leave to replead the claims in question as arising under federal law.

224 F.3d at 178–79. That circumstance is not present in the case at bar, since plaintiffs specifically allege that § 301 of the LMRA confers jurisdiction over their UCC unconscionability claim.

Accordingly the decisive question is whether a UCC-based or common law claim that the doctrine of contractual unconscionability voids the UBC Constitution states a viable cause of action under § 301 of the LMRA.

Defendants argue that "neither the Uniform Commercial Code nor the common law doctrine of 'unconscionability' apply to labor contracts." Main Brief at 9. They point out that UCC § 2–302, upon which plaintiffs rely, is found in Article 2 of the UCC, captioned "Sales"; moreover, § 2–102 provides that "[u]nless the context otherwise requires, this Article applies to transactions in goods," a category into which a union constitution does not fall. But defendants cite no case holding that the unconscionability doctrine can never be applied to a labor contract; nor do plaintiffs cite a case applying the doctrine to a union constitution. My own research led me to *Martinsville Nylon Employees Council Corp. v. NLRB*, 969 F.2d 1263 (D.C.Cir.1992), which considered whether a collective bargaining agreement's "no-oral-modification" and "entire agreement" clauses, coupled with the parties' prior

practices, precluded the employer's mid-term modification of the agreement. The majority looked to UCC §§ 2–208(1) and 2–209(2), together with common law principles, for guidance; *see* 969 F.2d at 1267 ("With virtually nothing to commend receiving the common law rule into 'the federal common law of collective-bargaining agreements,' we are confident that the UCC rule will better serve the purposes of collective bargaining and of industrial peace.") (citation omitted). The dissenting judge took a different view; *id.* at 1270 n. 1 ("I am unpersuaded that bargaining by commercial contractors is sufficiently similar to bargaining by labor and management that application of a rule generated in the commercial context is automatically appropriate for labor contracts. The vast *differences* between collective labor agreements and the general run of commercial contracts have been the subject of expert comment.") (citations omitted).

The majority's discussion in *Martinsville* suggests that UCC principles may have a productive role to play in formulation of the federal common law of collective bargaining agreements. The dissent disagrees. Were that question before me, I would be inclined to follow the dissent.[1] But the question does not arise in the case at bar, which involves the validity of a union constitution, not the interpretation of a collective bargaining agreement. And I conclude without difficulty that a federal district court should not pass upon the validity of a union constitution by applying to it so broad a doctrine as contractual unconscionability. Were it otherwise, ev-

ery dissident union local or member disappointed by or disapproving of a constitution enacted by a national union (as the UBC Constitution and amendments were enacted) could come to a federal district court and complain that the constitution was "unconscionable." Such a complaint, if entertained, would place the court at the center of the constitution-drafting process, a quintessential example of judicial intrusion into the internal affairs of a labor union. But that is not the district courts' proper function under the labor statutes, as the courts of appeals repeatedly caution. *See, e.g., International Brotherhood of Teamsters v. Local 810*, 19 F.3d 786, 793 (2d Cir.1994) (the LMRDA "is not to be read as an open invitation to federal courts to busy themselves with the internal affairs of unions, a task for which they are ill-equipped, and under which Act they have no broad power to intervene."); *Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir. 1964) ("Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited circumstances provided by the [LMRDA]...."); *Motion Picture & Videotape Editors Guild, Local 776 v. International Sound Technicians, Local 695*, 800 F.2d 973, 975 (9th Cir.1986) ("There is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions.... [A]bsent bad faith or special circumstances, an interpretation of a union constitution by union

---

1. I agree with the dissenting judge in *Martinsville* that there are "vast differences" between a commercial sales contract between a seller and a buyer and a collective bargaining agreement between an employer and a labor union. The New York Annotations to § 2–302 of the UCC, captioned "Unconscionable Contract or Clause" and upon which plaintiffs rely, describe the section's purpose: "This section states a theory new to *sales law* and is apparently designed to carry equity practice *into the sales field.*" N.Y.U.C.C. § 2–302, N.Y. Annotations (McKinney 1993) (emphasis added). It requires a considerable stretch to extend a doctrine intended for commercial sales contracts to the quite different field of collective bargaining.

officials, as well as interpretation of the union's rules and regulations, should not be disturbed by the court."), *amended,* 806 F.2d 1410 (9th Cir.1986), *cert. denied,* 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 765 (1987).

For the foregoing reasons I hold that neither § 2–302 of the UCC nor the common law of unconscionability of contract may form the basis of a claim under § 301 of the LMRA challenging the validity of the UBC Constitution. It follows that Count Two of the SAC fails to state a claim upon which relief can be granted.

## C. PLAINTIFFS' ADDITIONAL CLAIMS CONCERNING THE UBC CONSTITUTION

In addition to their claims based upon unconscionability of contract, plaintiffs allege in Count Two of the SAC that designated sections of the UBC Constitution as amended January 1, 1996 and all the amendments enacted at the 38th General Convention violate the Voting Rights Act of 1965 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Neither of these claims is viable.

### 1. The Voting Rights Act

■ The Voting Rights Act of 1965, 42 U.S.C. § 1973(a), provides that "[n]o voting qualification or prerequisite to voting or standard, practice or procedure shall be imposed by any State or political subdivision" so as to deny or abridge the voting rights of United States citizens "on account of race or color ..." Section 1973(b)(f)(2) prohibits the denial or abridgment of a citizen's voting rights "because he is a member of a language minority group."

■ It is readily apparent that the Voting Rights Act furnishes no support for plaintiffs' contention that sections of the UBC Constitution are invalid. The statute prohibits certain conduct by "any State or political subdivision"; the UBC cannot be so characterized. Moreover, plaintiffs nowhere allege that their voting rights as union members have been denied or abridged on account of their race, color, or membership in a language minority group.

### 2. The Equal Protection Clause

■ The Fourteenth Amendment to the United States Constitution provides in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; *nor deny any person within its jurisdiction the equal protection of the laws.*

(emphasis added). As with the Voting Rights Act, the Fourteenth Amendment prohibits state action only; its principles, while of central importance to the American democracy, do not apply to private entities such as the UBC.

## D. THE STATUTE OF LIMITATIONS

Count One of the SAC claims that designated sections of the UBC Constitution violate § 101(a)(1) of the LMRDA. Count Two claims that the same sections are void under the doctrine of unconscionability, and violate the Voting Rights Act and the Equal Protection Clause of the Fourteenth Amendment.

The discussion in Part II.A. of this opinion demonstrates that the Court lacks subject matter jurisdiction over the claims asserted in Count One. The discussion in Parts II.B. and C. demonstrate that Count Two does not state claims upon which relief can be granted.

With respect to plaintiffs' challenges to the UBC Constitution, defendants move in the alternative for partial summary judg-

ment on Counts One and Two on the basis of the statute of limitations. Specifically, defendants contend that plaintiffs' claims challenging the validity of sections appearing in the UBC Constitution of 1996 (the "Enumerated Provisions"), with the exception of Section 15F, are time barred. In support of that contention, defendants submit counsel's affidavit, based upon a review of UBC records, that "each of the 1996 Enumerated Provisions, with the exception of Section 15F, were approved and entered more than three years prior to the commencement of this action, on March 12, 1998." Affidavit of Willow Prall, verified October 21, 2002, at ¶ 6.

Given my conclusions that Counts One and Two must be dismissed in their entirety, I need not reach defendants' alternative cross-motion for partial summary judgment with respect to those counts. But I think it is useful to address the question, so that in the event of an appeal this Court's views may be fully known.

In *G.P. Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), the Supreme Court, noting that the LMRDA contains no statute of limitations for the private actions it authorizes, discerned "an analogy between § 101(a)(2) claims, [42 U.S.C.] § 1983 claims, and state personal injury actions," *id.* at 334, 109 S.Ct. 621, and held:

> The well-established rule that statutes of limitations for deferral causes of action not supplied with their own limitations periods will be borrowed from state law thus requires that state general or residual personal injury statutes be applied to § 101(a)(2) suits.

*Id.* That ruling extends equally to the § 101(a)(1) suit brought by plaintiffs at bar.

■ New York is the state whose law will be borrowed for limitations purposes in this LMRDA action. No one contends otherwise. New York's statute of limita-

tions for personal injury actions is three years. N.Y. CPLR § 214(5) (McKinney 1990). That limitations period governs this case. *See Wall*, 224 F.3d at 174 ("The district court concluded, and the parties agree, that a three-year statute of limitations applies to appellants' LMRDA claim.") (applying Connecticut three-year limitations for personal injury actions).

■ Plaintiffs do not dispute the statement in the Prall affidavit that the designated sections of the UBC Constitution were approved and enacted more than three years prior to the commencement of this action on March 12, 1998. It follows that as to those sections, plaintiffs' claims of invalidity are time-barred, unless plaintiffs can avoid the effect of the statute.

Plaintiffs seek to do so by submitting three identical affidavits declaring that they "did not discover the injury caused by the amendments to the UBC Constitution 6A, 6D, 10H, 10J, 26H, 26I, and 62 until the UBC imposed a trusteeship on the New York City and vicinity District Council of Carpenters and Joiners of America in late 1996." Plaintiffs invoke N.Y. CPLR § 214–c(2), which governs actions for personal injury or injury to property "caused by the latent effects of exposure to any substance or combination of substances ... upon or within the body or within property ..." Plaintiffs' advocacy is imaginative, but as the cases cited in defendants' Reply Brief at 6 demonstrate, the purpose of § 214–c(2) is to enlarge the limitations period for later-discovered injuries caused by substances such as asbestos or pesticides. There is no analogy between claims of that nature and the claims of plaintiffs at bar. In any event, the meaning and effect effects of the several UBC Constitution sections involved became apparent as soon as they were enacted.

Accordingly, if Counts One and Two of the SAC contained viable claims, which they do not, those claims would be time-barred to the extent contended for by defendants.[2]

## E. NEGOTIATION OF COLLECTIVE BARGAINING AGREEMENTS BY THE UBC WITHOUT RATIFICATION BY LOCAL UNIONS

During the trusteeship imposed by the UBC upon the District Council, the UBC negotiated and entered into collective bargaining agreements with employers. The UBC did not submit those agreements for ratification by the local unions affiliated with the District Council, whose members (such as the plaintiffs) are directly affected by the agreements' terms. In Count Three of the SAC, plaintiffs claim that the UBC's failure to obtain ratification by the local unions of the collective bargaining agreements violated § 101(a)(1) of the LMRDA and section 42J of the UBC Constitution.

The claimed violation of § 101(a)(1) does not fall within the Court's subject matter jurisdiction for the reasons stated in Part III.A., *supra.*

 Subject matter jurisdiction does exist with respect to plaintiffs' claim that the UBC violated section 42J of its Constitution when it entered into collective bargaining agreements without local union ratification. Section 301(a) of the LMRDA, 29 U.S.C. § 185(a), gives the district courts jurisdiction over "[s]uits for violation of contracts ... between any such labor organizations," namely, "a labor organization representing employees in an industry affecting commerce as defined in the Act." In *Wooddell v. International Brotherhood of Electrical Workers, Local 71,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d

419 (1991), the Supreme Court held that jurisdiction under § 301(a) extends to suits on union constitutions brought by individual union members. *Id.* at 101, 112 S.Ct. 494 ("[U]nion constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such interunion contracts, and when they are, they likewise may bring suit on these contracts under § 301.").

 The question therefore becomes whether section 42J of the UBC Constitution conferred upon the local unions affiliated with the District Council the right to ratify collective bargaining agreements which affected the members of the locals.

I must consider two versions of section 42J: that contained in the UBC Constitution as amended on January 1, 1996, and the version resulting from the amendments enacted at the 38th General Convention in August 2000, which became effective on December 1, 2000. In both versions section 42 is captioned, somewhat misleadingly in the present context, "Qualifications for Membership." The provisions pertinent to the present claim appear in subsection 42J. The 1996 version of section 42J provided:

> In contract ratification votes only those affected by the contract shall be eligible to vote; in cases of industrial contracts the members affected may vote without regard to their length of membership. The method of contract ratification, which *may* include a vote of the membership, shall be decided in the Local Union *or Council* and is *not mandated by the Constitution and Laws.* (emphasis added).

Section 42J as amended at the 38th General Convention provides:

---

**2.** Defendants do not contend that plaintiffs' claims predicated upon the amendments enacted at the UBC's 38th General Convention in August 2000 would be time-barred.

The method of contract ratification, which *may* include a vote of the membership, shall be decided by the Regional, Industrial or *District Council where such a Council exists* or by the Local Union if such Local Union is not affiliated with a Regional, Industrial or District Council and is *not mandated by the Constitution and Laws.* (emphasis added).

I am unable to discern in either version of section 42J a mandated right on the part of local unions to ratify contracts negotiated by a District Council. On the contrary: both versions provide that ratification *"may* include a vote of the membership," which clearly implies that a vote of local union members is optional, not mandated, for ratification; and the implicit is made explicit by the provision in both versions that ratification procedures are "not mandated by the Constitution." What happened in this case is that collective bargaining agreements with contractors were negotiated and entered into by the District Council without being submitted to the locals and their members for ratification. That course of conduct did not violate the UBC Constitution because both versions of section 42J sanctioned it. Accordingly, Count Three of the SAC fails to state a claim upon which relief can be granted.

## F. ELECTION OF BUSINESS REPRESENTATIVES

Count Four of the SAC alleges at ¶ 46 that defendants "have denied the right to local unions to hold elections for business representatives and business managers," a deprivation that is said to violate § 101(a)(1) of the LMRDA and section 31B of the UBC Constitution. Plaintiffs base their claim upon the propositions that § 101(a)(1) "states that officers must be elected," SAC ¶ 45, and that business representatives should be regarded as officers because they perform executive functions. Plaintiffs derive that argument from the LMRDA's generalized definition of union officers.[3] A more significant, particularized definition appears in section 31A of the 1996 and 2000 versions of the UBC Constitution, which both provide: "The officers of a Local Union shall be a President, Vice President, Recording Secretary, Financial Secretary, Treasurer, Conductor, Warden and three Trustees." Those designated officers "constitute the Executive Committee of the Local Union," and it is made plain that a business representative is not an officer; section 31A goes on to provide that "[a] Business Representative who is not a member of the Executive Committee shall attend the meetings of the Executive Committee with voice but without vote." This precise designation of a local union's officers trumps any generalized definition in the LMRDA; it cannot reasonably be suggested that the federal labor laws regulate which officers a labor organization must or must not have.

While it is common ground that business representatives for UBC local unions are not elected by the membership, plaintiffs do not state a claim under § 101(a)(1) of the LMRDA. That subsection contains no language mandating the election of officers; it simply guarantees union members, *inter alia,* "equal rights and privileges" within the labor organization "to nominate candidates" and "vote in elections." In any event, plaintiffs do not allege any discriminatory treatment, and so the

---

**3.** Section 3(n) of the LMRDA defines a union "officer" as "any constitutional officer, any person authorized to perform the functions of president, vice resident, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body." 29 U.S.C. § 402(n).

§ 101(a)(1) claim fails for the reasons stated in Part III.A., *supra*.

▌ As for plaintiffs' claim that the non-election of business representatives violates section 31B of the UBC Constitution, the record shows that section 31 of the 1996 Constitution was captioned "Nomination, Election and Appointment in Subordinate Bodies." Section 31B provided in pertinent part: "Business Representatives and assistant Business Representatives may be elected or appointed by Local Unions or District Councils." At the 38th General Convention section 31B was amended to read:

> Where Local Unions are affiliated with a District, Industrial or Regional Council, the services of any Business Representatives, Assistant Business Representatives, and Organizers shall be provided by and through such Council and such Business Representatives, Assistant Business Representatives, and Organizers shall be appointed by the Executive Secretary–Treasurer of the Council, subject to approval of the Executive Committee of the Council, and shall be employees of the Council.

The option of election of business representatives, as opposed to appointment, which existed in the 1996 Constitution was eliminated, so that now all business managers of local unions affiliated with a District Council (such as the locals to which plaintiffs belong) are appointed by the District Council. Plaintiffs complain of this alteration and ask the Court to direct that the local unions' business representatives be elected by the membership.

Plaintiffs' claim fails because I am unable to discern in either version of section 31B a vested right on the part of local unions to elect their business representatives. The 1996 Constitution provided that business representatives "may be elected or appointed by Local Unions or District Councils." Thus the election of a business

manager by a local union was only one of several permissible options; the procedure cannot be characterized as mandatory. While the 2000 Constitution eliminated the option of local union elections for business representatives, that does not confer upon the electoral procedure a mandatory character that it never had.

Every court considering the question has held that the appointment of local union business representatives, as opposed to their election, does not violate the UBC Constitution. *Local 1052 v. Los Angeles County District Council of Carpenters*, 944 F.2d 610 (9th Cir.1991), is squarely in point. The case involved the version of section 31B found in the 1996 Constitution. The Ninth Circuit reasoned:

> Section 31 makes clear that the right to elect a business representative is not a vested right. It specifically provides that a business representative is not an officer, and leaves to the District Council the option of providing the local unions with business representatives or allowing them to either elect or appoint their own representatives. Given this grant of discretionary authority to the District Council, it cannot be said that individual local unions have a vested right to elect business representatives.

944 F.2d at 614–15. It will be observed that the 2000 Constitution, providing for the appointment of business representatives by the District Council, represents the exercise by the District Council of a discretionary authority which the Ninth Circuit held the earlier version of section 31B conferred upon it. *See also Lathers Local 42–L v. UBC*, 73 F.3d 958, 962 (9th Cir.1996) (holding that bylaws granting exclusive control of business representatives to a district council did not violate the UBC Constitution); *Local No. 267 v. UBC*, 992 F.2d 1418, 1424 (6th Cir.1993) (district

council bylaws may be amended to eliminate right to vote for local union business representatives without violating the UBC Constitution.).

Plaintiffs include in Count Four references to the Fourteenth Amendment to the United States Constitution, the Voting Rights Act, and the doctrine of unconscionability, none of which can sustain a claim for the reasons stated *supra.*

Count Four must be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## G. THE SIX CENTS PER MEMBER WORKED HOUR TRANSFER OF FUNDS

In Count Five of the SAC, plaintiffs complain about a transfer of funds engineered by defendants while the District Council was operating under the trusteeship imposed upon it by the UBC. Plaintiffs' principal contention is that this transfer violated § 303(a)(2) of the LMRDA, 29 U.S.C. § 463(a)(2). Plaintiffs pray that the Court "order the UBC to give to the Plaintiffs and the NYCDCC a full accounting of all the moneys collected from the six cents per hour worked assessment and the return of all said moneys to NYCDCC" with interest. SAC at 14. Plaintiffs estimate the amount involved to be $6 million.

Section 303 of the LMRDA provides:

(a) "During any period when a subordinate body of a labor organization is in trusteeship, it shall be unlawful ... (2) to transfer to such organization any current receipts or other funds of the subordinate body except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship ..."

While the parties appear to agree that some sort of transfer or assessment of funds took place, the present record does not describe with particularity exactly what transpired.

Count Five of the SAC charges at ¶ 52 that defendants "violated section 303(a)(2) of the LMRDA when they transferred moneys of the NYCDCC in the form of six cents per member worked hour to the UBC supplemental fund during the trusteeship they imposed on the NYCDCC through contracts made for the NYCDCC and affiliated local unions with contractors and contractor associations by the defendants and trustees appointed by the defendants." The factual predicate for this claim appears in ¶ 23, which alleges that during the trusteeship "the UBC negotiated collective bargained [*sic*] agreements that took six cents per hour out of the rank and files [*sic*] hourly pay rate and gave it to the UBC supplemental fund" without membership ratification, in violation of § 303(a)(2). Plaintiffs' brief asserts in ¶ 154 that during the trusteeship the UBC and the District Council trustees "negotiated a 6 cents per hour assessment that was sent to the Internationals funds in Washington, D.C," in ¶ 164 that "the UBC assessed the six cents per hour from the membership of the New York City District Council of Carpenters as Trustees of the Council, and in ¶ 165 that during the trusteeship the General Officers of the UBC acting as trustees took six cents per hour worked from said council and its membership arbitrarily and without ratification of the members of the New York City District Council of Carpenters illegally." Paragraph 166 of plaintiffs' brief says that the Court should order an accounting "and return all monies collected by the UBC from the six cents per hour work assessments to the New York City District Council of Carpenters to be distributed to the membership immediately," with interest.

Plaintiffs' complaint and brief argue at some length that the District Council, not-

withstanding its designation, should because of its functions be regarded as a local union. That contention appears to be in support of plaintiffs' assertion that the District Council is "a subordinate body of a labor organization" within the meaning of § 303(a)(2). But I do not understand defendants to deny that the District Council is a "subordinate body" of that labor organization known as the UBC, as those terms are used in the statute. Defendants' motion to dismiss Count Five is based upon entirely different grounds.

Specifically, defendants contend that in Count Five plaintiffs "have failed to meet the threshold requirements of § 303(a)(2)" because "plaintiffs merely allege that a transfer of certain monies took place"; Count Five "fails to allege that these alleged transfers of monies constituted transfers of 'current receipts or other funds' of 'the subordinate body' within the meaning of § 303(a)(2)" of the LMRDA. Main Brief at 21–22. On the contrary, the defendants continue, ¶ 23 of the SAC "expressly alleges that these monies constituted direct payments, not from the District Council, but rather, from 'the rank and files [*sic*] hourly pay rate." *Id.* at 22. And defendants conclude by saying: "Moreover, the evidence would show that the recipient of the payments was not the UBC, but rather, separate labor-management funds established under § 302(c) of the LMRA, which is entirely proper." *Id.*

I can give no consideration to that last assertion because defendants offer no evidence to support it. What counsel say in a brief is evidence of nothing. Defendants submit no affidavits to show from whom these funds were taken and who received them; nor do they move for partial summary judgment on this claim. Instead, defendants move to dismiss this claim as a matter of law; and I decline, in the absence of any evidence, to speculate on what "the evidence would show" if offered.

On this state of the record, I am not able to discern with any confidence what monies were taken from whom and where they were sent. Contrary to defendants' assertion, plaintiffs have not foreclosed their claim out of their own mouths. While at one place in the SAC plaintiffs allege that the six cents per hour was taken "out of the rank and files' hourly pay," their brief says that these amounts were taken "from said council and its membership," and the relief prayed for is the return of the transferred funds "to the NYCDCC to be distributed to the membership." Neither the submissions of plaintiffs nor defendants describe the underlying facts with clarity. Only this much is clear: during the trusteeship the UBC imposed upon the District Council, an assessment of six cents per member worked hour was taken from someone and given to someone else, at a time when § 303(a)(2) explicitly makes it unlawful "to transfer to such organization [the UBC] any current receipts or other funds of the subordinate body [the District Council] except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship."

In these circumstances, I deny defendants' motion to dismiss Count Five for failure to state a claim upon which relief can be granted. For purposes of that Rule 12(b)(6) motion, courts construe the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), enhanced by the customary lenity with which courts read *pro se* pleadings. A court will grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In the case at bar, the present record does not show beyond doubt that these transfers of funds, whatever they were, did not violate the explicit

**508**

prohibitions of § 303(a)(2). *See Frenza v. Sheet Metal Workers' International Association*, 567 F.Supp. 580, 588 (E.D.Mich. 1983), where the district court denied the international union's motion to dismiss a § 303(a)(2) claim. The court reasoned:

> When a subordinate member of a labor organization is in trusteeship, it is unlawful to transfer to the labor organization any current receipts or other funds of the subordinate body except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship. In their complaint plaintiffs allege that the union defendants, during the period of the trusteeship, violated that rule by transferring sums that should have been retained in a local pension fund to the national pension fund. In response, the union contends that the national pension fund is an independent organization that is not under the control of the International. Given the state of the record, the court concludes that these contentions raise genuine issues of material fact relative to the union defendants' alleged violation of § 463(a)(2).

I reach the same conclusion in the case at bar.

■ Defendants also contend that Count Five must be dismissed pursuant to Rule 19(a), Fed.R.Civ.P., for failure to join an indispensable party, namely the District Council, and that plaintiffs lack standing to assert this claim, "which is essentially on behalf of the District Council." Main Brief at 22 n. 15. As far as the present record allows an evaluation of the first contention, the District Council may very well be an indispensable party under Rule 19(a); but the situation is easily remedied by designating the District Council as a party plaintiff with respect to this claim and directing plaintiffs to serve a copy of the SAC upon the District Council. Rule 19(a) provides that if a necessary person has not been joined in the litigation, "the court shall order that the person be made a party." Joining the District Council as a party plaintiff does not oust this Court of subject matter jurisdiction or adversely affect the venue. The second contention, relating to plaintiffs' standing, may be explored when additional evidence, perhaps including discovery, is before the Court with respect to what actually occurred.

## H. PROVISIONS OF THE UBC CONSTITUTION FOR ELECTING AND AMENDING THE CONSTITUTION AND BYLAWS

Count Six of the SAC alleges various perceived inequities in UBC Constitution provisions for the election of certain union officers and the manner in which the UBC Constitution and the bylaws of the District Council and its constituent locals may be amended. Plaintiffs contend that these provisions violate § 101(a)(1) of the LMRDA and the Voting Rights Act. The charges sought to be asserted in Count Six are not entirely clear, but the focus is sharpened to some degree by plaintiffs' prayer for relief on that count, in which they pray "that this Court order that District Vice Presidents be elected exclusively by members from their own district and the rank and file elections for any and all the Officers of the General Executive Board or General Office, we further pray for the ordering of rank and file ratification of all amendments made to the UBC Constitution, as well as any and all Bylaws for any and all Councils and local unions affiliated with the UBC...." SAC at 14–15.

■ With respect to the challenged election procedure, a further elucidation of plaintiffs' theory appears in their brief, where they say at ¶ 169:

> The way that the General Elections are run, the delegates of the various districts, i.e., Eastern District, Midwestern

District, Southern District, Central District, Western District, and Canadian District vote to elect the District Vice Presidents in each other's districts. Therefore, the members of the districts mentioned are not fairly represented. In order for the membership of the different districts to be fairly represented, the members from the districts from which they come should be allowed to vote only for the District Vice President from their district.

Thus plaintiffs' theory is that the votes of members from a particular district for the vice president of that district are unfairly diluted by the votes of members from other districts.

Whatever the underlying equities may be, as to which I intimate no view, it is clear that this claim is not cognizable under § 101(a)(1) of the LMRDA. The Second Circuit's holding in *Fritsch v. District Council No. 9, Brotherhood of Painters,* 493 F.2d 1061 (2d Cir.1974), is closely in point. In *Fritsch* two kinds of local unions were affiliated with a district council: "painters" locals and "autonomous" locals. The secretary-treasurer of the district council, who negotiated collective bargaining agreements for the painters' locals but not for the autonomous locals, was elected by the vote of all members of both kinds of locals. Plaintiffs, members of painters' locals, alleged that "this arrangement was a 'dilution' of the voting rights of the painters because the members of the autonomous locals may vote for the principal collective bargaining representative of the painters, while the latter have no reciprocal right to vote for the collective bargaining representatives of the autonomous locals." 493 F.2d at 1062. Plaintiffs alleged a violation of § 101(a)(1) of the LMRDA. The Second Circuit, citing the Supreme Court's holding in *Calhoon,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190, held that plaintiffs' claim did not fall within Title I of the statute, of which § 101(a)(1) forms a

part. The court of appeals reasoned that "the essence of Title I is the command not to discriminate against members and classes of members in their right to vote and nominate," *id.* at 1062, and "the command of Title I does not require a district court to enforce the 'one-man-one-vote' rule in the sense used here." *Id.* at 1063. Plaintiffs, the Second Circuit decided, were impermissibly attempting to bypass the Secretary of Labor, who may consider such complaints under Title IV of the statute. The district court had held, and the court of appeals agreed, that "plaintiffs' claim of dilution arose not under Title I, but under Title IV of the Act, 29 U.S.C. § 481(e), and was therefore cognizable in the district court only at the instance of the Secretary of Labor." *Id.* at 1062.

The rationale of *Fritsch* governs this case, since the allegations of plaintiffs at bar are just as devoid of allegations of discrimination against members and classes of members as were those of the plaintiffs in *Fritsch.* Rather, plaintiffs' claim is that the UBC Constitution is unfair to all members with respect to the challenged electoral and amendment procedures. Section 101(a)(1) of the LMRDA does not confer subject matter jurisdiction upon this Court to consider those claims; neither does the Voting Rights Act.

Accordingly, Count Six must be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts One, Two, Three, Four and Six of the plaintiffs' Second Amended Complaint is granted.

Defendants' motion to dismiss Count Five is denied.

Plaintiffs' cross-motion for summary judgment is denied.

Pursuant to Rule 19(a), Fed.R.Civ.P., I order that the District Council be made a

party plaintiff in the action bearing docket number 98 Civ. 1778. Plaintiffs are directed to serve a copy of the Second Amended Complaint upon the District Council on or before August 30, 2002. If the District Council refuses to be joined as a party plaintiff, the Court has the discretion under Rule 19(a) to make it an involuntary plaintiff.

The defendants are directed to answer Count Five of the Second Amended Complaint on or before August 30, 2002.

By separate Order, the Court will set the case down for a further status and scheduling conference in September, 2002.

It is SO ORDERED.